BERNHARD VOSS, Respondent, *v.* JOHN LOWRY, INC., Appellant.

First Department, April 5, 1929.

*Daniel S. Murphy* of counsel [*Francis J. Fitzpatrick* with him on the brief; *Greene & Hurd*, attorneys], for the appellant.

*Harry Lesser* of counsel [*Lesser & Lesser*, attorneys], for the respondent.

MCAVOY, J. The plaintiff was in the business of installing refrigerating equipment. He also manufactured such apparatus. The defendant is a builder who was the general contractor for the construction of the Thayer West Point Hotel at West Point, N. Y. The plaintiff asserted and attempted to show on the trial that defendant was an independent general contractor and that it employed the plaintiff and other subcontractors on its own responsibility and without regard to the liability of the owner. Defendant on

the trial denied that it was a general contractor and asserted that it was the agent only of the owner.

The complaint was for work, labor and services and materials furnished to defendant upon an alleged contract by defendant and a promise to pay therefor. The balance due was set at $2,000.

The judgment held the defendant individually liable for the unpaid balance due the plaintiff on the contract to furnish and install the refrigerating equipment in the Thayer Hotel, notwithstanding the fact, as defendant alleges, that it was known to the plaintiff at the time of the award of the contract that the defendant was acting merely as agent for the owner.

The proof shows that one A. Urban Zimmerman, representing the plaintiff, negotiated with the architects in charge for the purpose of obtaining the contract for installing this refrigerating plant. Zimmerman testified on the trial that he called upon the job supervisor for defendant, named Walden, and asked whether John Lowry or the owners were handling the contract for the refrigeration. Walden told Zimmerman that the defendant was the agent of the Thayer West Point Hotel Corporation and did not know whether they or the architect would handle it, or whether the owners themselves would handle the award. Walden's testimony in this respect is not contradicted or denied, although Zimmerman testified at the trial that Walden furnished Zimmerman with a copy of the plans and specifications to permit plaintiff to give his estimates on the cost of installation of the refrigerating plant, and the plaintiff then submitted a proposal, signed by Zimmerman, offering to furnish and install refrigerating equipment according to plans and specifications for slightly over $9,600. In this proposal plaintiff wrote: " We can start at once to install our equipment and assure you that we will cooperate with you 100%, and we know you and *your clients* will be more than pleased with our service. We have amongst our clients such builders as Marc Eidlitz, C. T. Wills, Bing & Bing, and would like to include you. We would appreciate a conference with you and *your clients* if same can be arranged so that we can answer any questions that might arise."

Zimmerman testified that by the words " your clients " he referred to whoever the owners were that had hired John. Lowry, and that the purpose of his conference with plaintiff and owners was to get the owners' approval of the proposed contract with the plaintiff.

In letting contracts on this work defendant consulted with the owner before the award of the contract each time, and each contract was first submitted to the owner.

Plaintiff was awarded the contract on March 17, 1926.0, for $9,00 The contract was signed " John Lowry, Inc., by William C. Bradbury " and " Voss Ice Machine Works, A. Urban Zimmerman."

Plaintiff proceeded with the work and in April, 1926, in order to expedite the work, plaintiff shipped the cork piping from Brooklyn, N. Y., by truck instead of waiting for a railroad shipment from Camden, N. J. The extra expense involved in this shipment to plaintiff was $152, and defendant gave plaintiff an order for this item which was accepted by the plaintiff under date of August 6, 1926, and this order was signed " John Lowry, Inc., agents for Thayer West Point Hotel Corp."

As the work went on the defendant made disbursements each month from its individual bank account, and at the end of each month the money received by the defendant from the owner on architect's certificates was disbursed by the defendant through its own bank account to the various concerns who were doing work on the job under contracts for labor and materials.

When plaintiff's contract was finished there was a balance due amounting to $3,952. The amount unpaid on the hotel amounted to approximately $250,000. The owner and the indemnitor for the owner — the firm of Southack and Ball, Inc.— offered to liquidate the entire indebtedness by paying $50,000 in cash, to be distributed among the various labor and materialmen, including plaintiff, and by delivering notes for the balance made by the owner and indorsed by Southack and Ball, Inc. This plan involved the division of the entire $50,000 in cash among the plaintiff and the other contractors furnishing labor and material, so that the defendant was obliged to accept approximately $150,000 of such notes for money owing to the defendant from the owner. This proposal was submitted to plaintiff and he agreed to accept and took a cash payment of $1,952.72, and the balance of $2,000 in notes.

The agreement under this compromise was in writing and states that it is between the plaintiff (called the creditor in the agreement) and the Thayer West Point Hotel Corporation (called the corporation) and Southack and Ball, Inc. (called the indemnitor). The defendant is not a party to this agreement, nor was defendant in any manner mentioned or referred to, except that the agreement is signed on behalf of the hotel corporation by " John Lowry, Inc., its agent."

This agreement contains recitals which read that the creditor (plaintiff here) has performed work, labor and services and furnished material to the corporation, i. e., the Thayer West Point Hotel Corporation, of agreed value of the amount then due which is asserted to be now due and owing; that the purpose of the agreement is to reduce the indebtedness to the creditor (plaintiff); that the corporation (owner) has requested an extension of time to pay said indebtedness and has offered to liquidate the same by payment

in cash and delivery of notes, and it is agreed that the party creditor (plaintiff) accepts the offer of the said corporation, and acknowledges the receipt of the cash and indorsed notes, and agrees to the conditions of the offer in behalf of itself or of any person to whom the same may be indorsed or transferred.

Plaintiff received this cash payment out of the $50,000 supplied by the owner which was disbursed by defendant among the materialmen. Payment was made by defendant's check drawn on its account. Plaintiff also received two promissory notes of $1,000 each made by the corporation (owner) payable to Southack and Ball, Inc., and indorsed by them. Zimmerman asked Mr. Lowry, president of defendant corporation, to indorse the notes either individually or on behalf of the defendant John Lowry, Inc., but Lowry refused to do so. The notes were renewed as provided in the agreement just recited — the renewal notes being similar in form to the originals. These renewal notes were not paid at maturity and were protested, and at the time of trial involuntary petitions in bankruptcy were filed against the hotel corporation and Southack and Ball, Inc.

The proof as thus recited indicates decisively that in the dealings had between plaintiff and defendant, defendant acted as agent for the Thayer West Point Hotel Corporation; that defendant disclosed the principal to the plaintiff before the contract was awarded to the plaintiff, and that thus the liability was upon the owner and not on the general contractor. The very agreement between the Thayer West Point Hotel Corporation and the defendant expressly provides that the defendant is to act as agent for the owner and is to receive as commission for its services as agent under the contract $75,000. The contract of settlement, signed " Thayer West Point Hotel Corporation by John Lowry, Inc., its agent, William C. Bradbury, Treasurer," was accepted by the plaintiff without question, and its conduct in this respect is entirely irrefutably inconsistent with the claim now made that plaintiff dealt with the defendant as principal. At the time this contract was made plaintiff made no claim against the defendant, but, on the contrary, stated over his own signature that his claim for payment on his contract was against the defendant's principal, the Thayer West Point Hotel Corporation.

Lowry testified, without his testimony being denied, that at the time he told Zimmerman of the terms of the offer to pay $50,000 in cash and $200,000 in notes for distribution among the creditors, Zimmerman asked Lowry: " Will you indorse the notes? " and he said he would not. He asked then if the corporation would indorse the notes and Lowry said it would not. Plaintiff accepted these notes without defendant's indorsement, and its failure to obtain

defendant's indorsement upon these obligations from the hotel corporation to plaintiff is additional indication that plaintiff did not consider defendant liable on the contract but knew that the contract was made as agent for the disclosed owner.

It is the rule that where an agency is disclosed and the contract relates to the matter of the agency and is within the authority conferred, the agent will not be personally bound unless there be clear and explicit evidence of an intention to substitute or to superadd the personal liability of the agent to that of his principal. We find the evidence carries no such intention by fact or inference.

There was also error committed in the conduct of the trial in admitting evidence of the nature of the signature of defendant to other contracts made with materialmen during the performance of this work, but it will not be necessary to advert to this since we conclude that the proof failed to justify on the whole case a finding that the defendant could be held liable as principal, and accordingly the complaint should be dismissed.

The judgment and order should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., FINCH, MARTIN and O'MALLEY, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.